# United States Court of Appeals
## For the Eighth Circuit
_____

No. 21-3885
_____

Dean Christiansen

*Plaintiff - Appellant*

v.

Christopher Eral, individually and in his official capacity as an officer of the Sioux City Police; Rex Mueller, individually and in his official capacity as Chief of Police for the Sioux City Police Department; City of Sioux City

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Northern District of Iowa - Western
_____

Submitted: September 21, 2022
Filed: October 31, 2022
_____

Before LOKEN, ARNOLD, and KOBES, Circuit Judges.
_____

ARNOLD, Circuit Judge.

When Dean Christiansen led police on a high-speed vehicle chase over the South Dakota state line into Iowa, Sioux City police officer Christopher Eral ended it by performing a "Pursuit Intervention Technique," or PIT maneuver, causing Christiansen to crash his truck and injure his chest, knee, and hip. Christiansen sued

Eral, Eral's boss, and the city under 42 U.S.C. § 1983, but the district court[1] dismissed his complaint on the ground that it didn't state a claim. Christiansen appeals that determination, but we affirm.

At this stage of the proceedings, we accept the facts alleged in Christiansen's complaint as true. *See Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020). He alleges that in June 2019 a police officer in North Sioux City, South Dakota, observed Christiansen's truck leave a casino parking lot in the middle of the night. The officer tried to initiate a traffic stop purportedly for mechanical issues, but Christiansen says that was just a pretext for stopping the truck so he could perform a suspicionless search. Christiansen did not stop his truck but instead fled with the officer in pursuit.

As the chase continued, Christiansen increased his speed to about eighty miles per hour. About two minutes into the chase he drove across the state line into Sioux City, and the officer in pursuit told Sioux City police, including Eral, that he suspected Christiansen of driving while intoxicated. Sioux City police attempted to halt Eral's flight with "stop sticks," but a different vehicle hit the sticks instead, and Christiansen had to swerve to avoid it and the sticks. The pursuing officer hit the stop sticks as well, disabling his vehicle.

At that point Eral entered the pursuit. He announced an intention to end the chase with the PIT maneuver at a time when Christiansen was driving between eighty and ninety miles per hour. Moments later Eral struck Christiansen's truck, causing it to spin into a ditch and collide with a light pole.

---

[1]The Honorable Kelly K.E. Mahoney, Chief Magistrate Judge, United States District Court for the Northern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

Christiansen brought claims against Eral for using excessive force against him and for violating his substantive due process rights. He also asserted a claim against Eral's boss in his official capacity and against Sioux City for Eral's use of excessive force. The district court, however, held that Christiansen's complaint did not state a claim. It concluded that Eral had acted reasonably in using the PIT maneuver to end the chase and so had not used excessive force. It also determined that Christiansen hadn't adequately alleged that Eral violated his substantive due process rights because the allegations in the complaint failed to show that Eral had acted maliciously and sadistically to harm Christiansen. And without an underlying constitutional violation, the court explained, the claim against Eral's boss and the city failed too.

We review de novo the district court's decision to dismiss Christiansen's complaint for failing to state a claim. *See Vandevender*, 970 F.3d at 975. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Christiansen maintains that the court should not have dismissed his claims because Eral knew that both his pursuit of Christiansen and his use of force violated police department policy. For example, he alleges that department policy prohibited Sioux City officers from becoming directly involved in this chase absent the commission of an offense in their jurisdiction. Nor had Sioux City officers received the necessary authorization to use stop sticks or perform a PIT maneuver. Department policy also prohibited Eral from using the PIT maneuver while Christiansen was traveling over forty miles per hour or where fixed objects, such as the light pole Christiansen crashed into, are present.

Federal law subjects to suit persons who, under color of state law, deprive a person "of any rights, privileges, or immunities secured by the Constitution and laws." *See* 42 U.S.C. § 1983. We've repeatedly explained that police department guidelines and policies do not create rights that give rise to a § 1983 action. *See Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993). Christiansen recognizes our view but tries to circumvent it: He says that, though "a policy violation does not equate to a constitutional violation, [Eral's] knowledge of the policy shows his use of force in these circumstances was objectively unreasonable and an intent to harm" Christiansen.

Not so. Even if we accept Christiansen's conclusory allegation that Eral knew the relevant policies, *see Iqbal*, 556 U.S. at 680–81, his knowing violation of department policy doesn't transform his actions into unconstitutional behavior. Eral may be subject to internal discipline from the department, but the constitution doesn't rise and fall with the whims of each police department's policies, which are free to go above and beyond what the constitution or federal law requires. *See Cole*, 993 F.2d at 1334. Eral's actions may show nothing more than mere disagreement with department policies or, relatedly, that he thought reason required him to act as he did rather than follow department directives. Just because Eral chose to violate department policy doesn't mean that he acted unreasonably from a constitutional perspective or with malicious intent to harm Christiansen. To hold otherwise would open a backdoor permitting Christiansen to escape the well established and commonsense notion that only the constitution and laws can create constitutional and legal rights. *See id*.

We point out, moreover, that the Supreme Court has already deemed materially identical behavior constitutional. In *Scott v. Harris*, a motorist led police on a chase that reached speeds exceeding 85 miles per hour. 550 U.S. 372, 374–75 (2007). At one point the motorist pulled into a parking lot where officers tried to box him in, but he evaded the trap by colliding with an officer's car and driving away, resuming the

chase. The officer ended the chase by applying his "push bumper" to the back of the motorist's vehicle, causing the motorist to crash. The crash rendered the motorist a quadriplegic. *See id.* at 375. The question before the court was whether an officer could "take actions that place a fleeing motorist at risk of serious injury or death in order to stop the motorist's flight from endangering the lives of innocent bystanders." *See id.* at 374.

The Court held that the officer's actions were objectively reasonable because the chase "posed a substantial and immediate risk of serious physical injury to others," and "no reasonable jury could conclude otherwise." *See id.* at 381, 386. It explained that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *See id.* at 386. So too here.

Christiansen maintains that he was not an immediate threat at the time Eral performed the PIT maneuver. His complaint says that at that time "the only vehicles in the vicinity were [Christiansen's] truck and police vehicles," and "there were no pedestrians or bystanders at risk from [Christiansen's] driving." But the Supreme Court in *Scott* was presented with a similar situation; there the Court acknowledged that at the time the police officer rammed the motorist's car, "it was not threatening any other vehicles or pedestrians," *see id.* at 380 n.7, and yet held that wasn't enough to render the officer's actions unreasonable. In fact, the court suggested it might be less reasonable for an officer to trigger an accident when other cars and pedestrians were present. *See id.* The main point is that Christiansen had already threatened the safety of others during the chase. A bystander vehicle and a police vehicle had hit stop sticks intended for his car, which almost caused an accident, and Eral had received a report from an officer in pursuit that Christiansen was suspected of driving while intoxicated. We think it was reasonable as a matter of law for the officers to think that, if the chase continued, Christiansen posed a risk of serious harm or even

-5-

death to others he encountered along the way. *See Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 580–81 (5th Cir. 2009).

Finally, Christiansen in his briefs makes much of the light pole that he crashed into, arguing that its presence made the PIT maneuver so dangerous that it was unreasonable and that it evinces a malicious intent by Eral to harm Christiansen because it was clearly visible and known to Eral. But Christiansen's complaint doesn't contain those allegations. And even if it did, we wouldn't hold that Eral acted unreasonably or with a malicious intent to harm because it's not plausible to believe that an officer, traveling eighty to ninety miles per hour, could perform the PIT maneuver with any confidence that the resulting crash, if there is one, would involve the fleeing motorist crashing against the pole in a manner that would elevate the risk of harm. We think that the complaint demonstrates only that Eral made a split-second decision in a high-pressure circumstance to end a chase in a manner that the Supreme Court has already blessed; there is simply no indication from the complaint that Eral had a purpose "unrelated to the legitimate object of arrest." *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 836 (1998).

We therefore agree with the district court that Christiansen has not plausibly pleaded that Eral used excessive force or violated his substantive-due-process rights. In the absence of a constitutional violation, Christiansen's claim against Eral's supervisor in his official capacity and against the city necessarily fail as well. *See Meier v. City of St. Louis*, 934 F.3d 824, 829 (8th Cir. 2019).

Affirmed.

_____